## Case No. 14,131.

### The TRACY J. BRONSON.

[3 Ben. 341.] [1]

District Court, N. D. New York. June, 1869.

COLLISION—SCHOONERS MEETING—MUTUAL FAULT
—INSCRUTABLE FAULT—APPORTIONMENT.

1. Two schooners, the Barney and the Bronson, came in collision in Lake Huron. They had been sailing, the Barney, west by north half north, on her port tack, and the Bronson southeast by east half east, on her starboard tack. Each claimed that she was close-hauled, and that the other had the wind free. The helm of the Barney was starboarded and the helm of the Bronson ported, when a collision was seen to be inevitable. The evidence as to the direction of the wind was conflicting, and without preponderance in favor of one side or the other, and it was agreed, by both parties that the case must be determined by the 12th article of the act of 1864 [13 Stat. 60], as being one of vessels crossing: *Held*, that under that article the Barney must prove satisfactorily, in order to recover full indemnity, that she was close-hauled and that the Bronson was free, and that she had failed to do this;

2. It being impossible on the pleadings and proofs to determine the direction of the wind, or which vessel was close-hauled, the case might be properly considered as one of mutual fault or of inscrutable fault;

3. In either case, the damages must be divided;

4. The case was, more properly, one of vessels meeting instead of crossing, and should be determined under the 11th article instead of the 12th;

5. Both vessels should have ported, and as neither ported until the collision was inevitable, both vessels were in fault, and the damages must be divided.

In admiralty.

Geo. Willey, for libellants.

G. B. Hibbard, for claimants.

HALL, District Judge. This is a case of collision, prosecuted to recover damages for the loss of the schooner F. T. Barney and her cargo, which were sunk by a collision with the Bronson in October, 1868.

The collision occurred in Lake Huron, about five miles from land, and between 12 and 1 o'clock at night. The Barney was proceeding up the lake, on a course of west by north half north, and the Bronson was com-

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

ing down the lake, on a course of southeast by east half east,—by their respective compasses. Thus, there was only a difference of a single point in the lines of their respective courses; and, as they were both in the usual track of vessels going up or down the lake, near the place of collision, it is quite likely that the lines of their actual courses were even more nearly parallel.

The libel alleges that the wind was from the south southwest; that the Barney was close-hauled, and on her port tack; that she was kept steadily on her course down to the very instant of the collision, when her helm was put hard down (to the starboard); and that the Bronson struck the Barney, stem on, just forward of the cabin, cutting her down so that she sunk in about fifteen minutes after the collision. The answer states that the wind was from the south; that the Bronson was kept steadily on her course, close-hauled, on the starboard tack, until a very short time before the collision, and when a collision was imminent and unavoidable; that her helm was then ported, and she swung to starboard; and that in a very short time the stem of the Bronson struck the Barney on her starboard side.

The evidence in regard to the angle at which the vessels struck, renders it quite probable that the change of helm by the two vessels, or by one of them, was made at an earlier time than the pleadings would indicate; but there is no means of determining whether the libel or the answer is most nearly correct in respect to the time of the change of helm, or whether the helm of either vessel was changed until it was too late for either, by any change of helm, or otherwise, to avoid the collision.

The evidence given by the crews of the respective vessels is distinct and positive that their own vessel was closehauled on the wind; and the testimony of several other witnesses who were on other vessels in the vicinity of the Barney and Bronson at the time of the collision, and who state their recollections in respect to the direction of the wind, is conflicting and irreconcilable. Indeed, the evidence upon this question is so nearly balanced, that it is impossible to determine to which side the preponderance of the testimony inclines.

A careful examination of the whole testimony has not enabled me to discover any means of determining that the wind was south southwest, as alleged in the libel, or south, as stated in the answer; or that either of the vessels was close-hauled; and, if not most probable, it certainly is not very improbable, that each had the wind one and a half to three and a half points free. In fact, the testimony upon which this case must now be decided, is even more conflicting and unsatisfactory than that ordinarily given in collision cases; and it may also be doubtful what rule of navigation must be held to apply to the case.

It was substantially agreed by the counsel for the respective parties, that the case was within the provisions of the 12th article of the act of 1864, fixing certain rules and regulations for preventing collisions. This article provides that, "When two sailing ships are crossing, so as to involve risk of collision, then if they have the wind on different sides, the ship with the wind on the. port side shall keep out of the way of the ship on the starboard side; except in the case in which the ship with the wind on the port side 'is close-hauled and the other ship free, in which case the latter ship shall 'keep out of the way."

Under this rule, the libellants, to entitle themselves to full indemnity, must prove affirmatively and satisfactorily, that their own vessel was close-hauled, and that the Bronson had the wind free. This they have certainly failed to do; and they can only recover a portion of their damages upon the ground that the case is one of inscrutable fault, if article 12 must be held to furnish the rule of decision.

That at least one of the vessels was in fault is clear, and it is quite probable that both were so; and it being impossible, upon the pleadings and proofs, to reach any satisfactory conclusion in regard to the direction of the wind, or to determine which, if either, of the vessels was close-hauled, the case may, under the 12th article before referred to, be properly considered as one of mutual fault, or else one of inscrutable fault—requiring, in either case, a division of the damages. Indeed, such must be the decision if the case is disposed of under the 12th article. 1 Conk. Adm. 378–382, and cases cited; Code de Commerce, art. 407.

I am the more willing to make this disposition of the case because I think the 11th article, and not the 12th, should furnish the rule of decision. This 11th article provides that, "if two sailing ships are meeting end on, or nearly end on, so as to involve risk of collision, the helms of both shall be put to port, so that each may pass on the port side of the other;" and it is quite clear, that although one of the colliding vessels might have been properly considered as nearly close-hauled, or as "running with a good full," neither was so close to the wind that a slight change to starboard might not have been made without going about, or being thrown in stays; and that, therefore, the vessel on the starboard tack was not relieved from the duty of porting her helm by the provisions of the 19th article. The Princessan Lovisa v. The Artemas, Holt, Rule of Road Cas. 75–77.

The libel states that the light of the Bronson, when first seen, was on the Barney's starboard bow. The libellant's proof is that it was seen about a point or a point and a half off that bow; yet, as the libel states that the light seen was a green light, and that her red light was not seen until a very short time before the collision, and when a collision was inevitable, this, with the whole testimony in the case, shows that the light of the Bronson was probably first seen more directly ahead of the Barney than would be inferred from the statements of her witnesses alone. The pleadings and proofs on the part of the claimants, show that the red and green lights of the Barney were both seen at the same time, and nearly ahead, or about a half a point off the Bronson's port bow; and the proof in behalf of each vessel is that her own course was not changed until a collision was inevitable.

Under such circumstances, and under all the proofs in the case, I think these vessels were meeting end on, or nearly end on, as provided for in article 11, and that they were not crossing, as provided for in rule 12.[2] I am also strongly inclined to think that neither was running as close as possible to the wind, and as neither ported her helm in time, both must be held in fault. The Princessan Lovisa v. The Artemas, Holt, Rule of Road Cas. 75; The Amalia v. The Catharina Maria, Id. 87.

The damages sustained by the two vessels will be aggregated, and then equally divided between them.

3. So limited, it is not infringed by the defendants' device, in which there are no lateral chaff openings in the periphery of the distributor through

---

[2] That the case comes under the 11th article referred to, see The Nichols, 7 Wall. [74 U. S.] 656.

